UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN HARRIS,

    Plaintiff,

v.    Case No. 2:05-cv-198
    HON. R. ALLAN EDGAR

NANCY HULKOFF,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kevin Harris, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Nurse Nancy Hulkoff.

Plaintiff's complaint alleges that on June 14, 2002, he was incarcerated at AMF. Plaintiff alleges that he was harassed by staff and inmates. Plaintiff alleges that he placed a towel over his cell door window while he was using the toilet in his cell. Officer Rynolds, while doing rounds, knocked on the door. Plaintiff stated that he was all right. Plaintiff responded a second time that he was okay and that he was just using the facilities. Plaintiff stated that he was not suicidal and would take the towel down when he was done. Officer Rynolds asked plaintiff several more times if he was contemplating suicide. Plaintiff responded that he was not. A sergeant then came to the cell door and asked plaintiff to come to the door and take the towel down. Plaintiff responded that he would in a minute, because he was using the facilities. Plaintiff told the sergeant to "get the f___ on."

The sergeant left, but then returned with defendant Hulkoff. Defendant Hulkoff wanted to talk to plaintiff. Plaintiff eventually came to the door and pulled back the towel. Plaintiff stated that he was all right and that he was just using the facilities, but still was not yet done. Approximately 12 minutes later, when the window was uncovered, plaintiff saw officer Rynolds with a camera video taping plaintiff. Plaintiff asked "what's this shit." Officer Rynolds stated "well, I told 'ya to take the towel down." Plaintiff told officer Rynolds to put the camera away, get the nurse and instructed officer Rynolds to get the store orders. Plaintiff told officer Rynolds to stop playing games. Plaintiff states that Rynolds had heard about plaintiff's lawsuits from word of mouth so Rynolds was motivated to place plaintiff on suicide watch to harass plaintiff, because it was store day. Plaintiff then decided to shave with "magic shave." Plaintiff knew that he would be escorted to an observation cell. Plaintiff was upset, because he knew that he would not be receiving any store goods.

Plaintiff then heard another inmate state, "what is the goon squad doing here?" Plaintiff saw Officer Karen Graan run to his cell door, wearing full gear, and then place a key in the door. Another officer slammed a shield against the door. Plaintiff was scared, because most of the squad members were out to get him. Plaintiff responded that he was coming out, and for the squad to hold on. Plaintiff believed that he was about to be assaulted. Plaintiff states that he was yelled at and ordered to comply with a strip search and yelled at during the strip search. Plaintiff was placed in restraints. Plaintiff complained that the restraints were too tight. After being placed in a cell, plaintiff complained that he was cold and asked for a blanket which he did not receive. Plaintiff was wearing a gown when an officer came by, stared at plaintiff and stated: "I know who you are f___boy." Plaintiff asked for a blanket. The officer stated "I know you, your paralegal Harris, I heard of ya." Plaintiff claims that Officer Lampela refused to turn the water on in his cell, so he

could flush the toilet or get a drink of water. Plaintiff claims that officer Lampela refused to provide plaintiff dinner. Later that shift, the water was turned on so plaintiff could flush the toilet and get a drink of water and then it was shut off. Plaintiff alleges that he was taunted and harassed by other inmates who called him "happy" which is a name corrections officer gave him. When third shift officer Davis did his rounds, he told plaintiff that he was shocked that the nurse failed to give plaintiff a blanket. Plaintiff complains that sleep was impossible because he was so cold. Plaintiff alleges that he finally received a blanket 52 hours after he first requested it. After receiving the blanket, plaintiff was able to sleep.

Plaintiff alleges that defendant failed in her duty to look after plaintiff's well being and to prevent plaintiff from being subjected to extremely cold temperatures. Plaintiff alleges that defendant decided to have plaintiff brought to a suicide cell, after being strip searched.

Defendant has filed a Motion for Dismissal for Failure to Exhaust, pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th

- 3 -

Cir. 1993) (*quoting Conley*, 355. U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 988 F.2d at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Defendant argues that plaintiff's claim is barred by the three year statute of limitations period because the action accrued on June 14, 2002, and the case was filed on August 17, 2005. Defendant also argues that plaintiff failed to exhaust his grievance remedies by naming her in a grievance. Plaintiff submitted a copy of a step I grievance in which he asserted that he was taken by a goon squad to a cell and placed on suicide status, denied water and was placed in extreme cold. Plaintiff alleged that Nurse Nancy was negligent in not giving plaintiff a blanket. The Step III grievance response is dated September 25, 2002. Plaintiff clearly exhausted his grievance remedies against defendant Nancy Hulkoff. Similarly, plaintiff's complaint is timely.

Federal courts apply state personal injury statutes of limitations to claims brought under §1983. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). However, the Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999). This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Plaintiff's civil rights action was tolled for the period during which his available state remedies were being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (*citing Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). Plaintiff filed his complaint within three years from the time he received his Step III response. Therefore, in the opinion of the undersigned, plaintiff's complaint is timely.

Accordingly, it is recommended that defendant's Motion to Dismiss (Docket #198) be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 25, 2006