UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN HARRIS,

    Plaintiff,

v.                                       Case No. 2:05-cv-198
                                            HON. R. ALLAN EDGAR

NANCY HULKOFF,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Kevin Harris, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against Nurse Nancy Hulkoff. Plaintiff's complaint alleges that on June 14, 2002, while he was incarcerated at AMF, he was harassed by staff and inmates. Plaintiff alleges that he placed a towel over his cell door window while he was using the toilet in his cell. Officer Rynolds, while doing rounds, knocked on the door. Plaintiff stated that he was all right. Plaintiff responded a second time that he was okay and that he was just using the facilities. Plaintiff stated that he was not suicidal and would take the towel down when he was done. Officer Rynolds asked plaintiff several more times if he was contemplating suicide. Plaintiff responded that he was not. A sergeant then came to the cell door and asked plaintiff to come to the door and take the towel down. Plaintiff responded that he would in a minute, because he was using the facilities. Plaintiff told the sergeant to "get the f___ on."

The sergeant left, but then returned with defendant Hulkoff. Defendant Hulkoff wanted to talk to plaintiff. Plaintiff eventually came to the door and pulled back the towel. Plaintiff

stated that he was all right and that he was just using the facilities, but was not yet done. Approximately 12 minutes later, when the window was uncovered, plaintiff saw officer Rynolds with a camera video taping plaintiff. Plaintiff asked "what's this shit." Officer Rynolds stated "well, I told 'ya to take the towel down." Plaintiff told officer Rynolds to put the camera away, get the nurse, and instructed officer Rynolds to get the store orders. Plaintiff told officer Rynolds to stop playing games. Plaintiff states that Rynolds had heard about plaintiff's lawsuits from word of mouth so Rynolds was motivated to place plaintiff on suicide watch to harass plaintiff because it was store day. Plaintiff then decided to shave with "magic shave." Plaintiff knew that he would be escorted to an observation cell. Plaintiff was upset because he knew that he would not be receiving any store goods. Plaintiff then heard another inmate state, "what is the goon squad doing here?" Plaintiff saw Officer Karen Graan run to his cell door, wearing full gear, and then place a key in the door. Another officer slammed a shield against the door. Plaintiff was scared because most of the squad members were out to get him. Plaintiff responded that he was coming out, and for the squad to hold on. Plaintiff believed that he was about to be assaulted. Plaintiff states that he was yelled at and ordered to comply with a strip search and yelled at during the strip search. Plaintiff was placed in restraints. Plaintiff complained that the restraints were too tight. After being placed in a cell, plaintiff complained that he was cold and asked for a blanket which he did not receive. Plaintiff was wearing a gown when an officer came by, stared at plaintiff and stated: "I know who you are f___boy." Plaintiff asked for a blanket. The officer stated "I know you, your paralegal Harris, I heard of ya." Plaintiff claims that Officer Lampela refused to turn the water on in his cell so he could flush the toilet or get a drink of water. Plaintiff claims that officer Lampela refused to provide plaintiff dinner. Later that shift, the water was turned on so plaintiff could flush the toilet and get a drink of water and then was again shut off. Plaintiff alleges that he was taunted and harassed by

other inmates who called him "happy" which is a name corrections officers gave him. When third shift officer Davis conducted his rounds, he told plaintiff that he was shocked that the nurse failed to give plaintiff a blanket. Plaintiff complains that sleep was impossible because he was so cold. Plaintiff alleges that he finally received a blanket 52 hours after he first requested it. After receiving the blanket, plaintiff was able to sleep.

Plaintiff claims that Defendant made the decision to place him in an observation cell, that this observation cell was extremely cold, that she had actual knowledge of the cell's temperature, and that she deliberately denied Plaintiff the suicide blanket which is ordinarily given to prisoners on suicide watch. Plaintiff further alleges that he was treated roughly and suffered pain at the hands of the move team while he was being transferred to observation. Plaintiff claims that he suffered cruel and unusual punishment in violation of the Eighth Amendment. He also claims that these actions were taken in retaliation for lawsuits filed by the Plaintiff against other prison staff, and that this constituted a violation of his rights under the First Amendment. Plaintiff claims that Defendant violated his Fourteenth Amendment rights by placing him on suicide watch without reason or justification. Finally, Plaintiff claims that Defendant was additionally motivated to withhold a suicide blanket because of his race.

Presently before the Court is Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there

is a genuine issue of material fact for trial. *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that his First Amendment, equal protection and due process rights were violated by his placement in suicide observation.  Plaintiff alleges that his First Amendment, equal protection and Eighth Amendment rights were violated by his deprivation of a suicide blanket.  Defendant asserts that she is entitled to qualified immunity on all of Plaintiff's claims because she did not violate Plaintiff's constitutional rights.

The heart of Plaintiff's complaint is his claim that the actions of Defendant violated the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment therefore prohibits conduct by prison officials that involves the

"unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998), cert. denied, 119 S. Ct. 1028 (1999). Moreover, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable. In sum, the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989), cert. denied, 493 U.S. 969 (1989); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988). A claim under the Eighth Amendment comprises an objective and subjective component: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

The objective component of Plaintiff's Eighth Amendment claim is based on the failure of Defendant to provide him with a blanket given the cold temperature of the cell Plaintiff occupied while on suicide watch. Neither party has offered any direct evidence as to the actual temperature of the cell. Plaintiff has alleged that nearby inmates were "wearing multiple layers of clothing, coats, hats, gloves, and blankets[.]" Plaintiff claims that prisoners have filed grievances regarding the low temperature of these cells in the past, but has not supported this claim with any evidence. Plaintiff also claims that the usual practice at AMF was to issue a suicide blanket to prisoners entering these cells, although Defendant's affidavit indicates that her understanding of policy was that a mattress and gown were the standard items issued to prisoners in observation cells.

Plaintiff cites *Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006), in support of the proposition that placement in an extremely cold cell can be a deprivation that rises to a level which implicates the Eighth Amendment. In *Spencer*, the plaintiff alleged that he was kept in a cold cell block without appropriate clothing for more than ninety days. He presented evidence indicating that corrections officers wore winter coats in this cell block, that rain and snow leaked into his cell, and that officers deliberately removed self help measures that inmates had constructed in an attempt to remedy the cold. The court found that while there were doubts as to exactly how cold it was in the cells, it was clear that the plaintiff lived in them for several months, including December and January. The court emphasized that the long period of the deprivation was an important factor in raising it to a constitutionally cognizable level.

Plaintiff's complaint here is distinguishable on several grounds, the most important being the length of time Plaintiff spent in the observation cell before being given a suicide blanket. Plaintiff was at most deprived of warmth for fifty-two hours. Rain or snow did not leak into Plaintiff's cell. The alleged deprivation to Plaintiff occurred in June[1], not in the middle of winter as was the case in *Spencer*. Unlike the plaintiff in *Spencer*, Plaintiff has not supported his contention that the cell temperature was the subject of previous prison grievances with any documentation. Nor has he alleged that corrections officers wore additional warm clothing while working in the area. The plaintiff in *Spencer* presented an entirely different level of deprivation from that alleged here.

Plaintiff here has alleged that he subjectively felt cold, but has not presented evidence indicating that the cells were objectively so cold as to present a health risk to persons confined in them. For purposes of a motion for summary judgment, this Court must accept as true Plaintiff's

---

[1] Regardless of what many believe, the weather in the Upper Peninsula of Michigan is quite pleasant in June.

contention that he felt very cold. However, the evidence of record does not support the contention that the cell was so cold as to be dangerous to Plaintiff's health. Accordingly, Plaintiff has failed to demonstrate a sufficiently grave deprivation to establish a violation of his rights under the Eighth Amendment.

Furthermore, even were it established that the cell was dangerously cold, Plaintiff has presented no evidence that Defendant was actually aware of the temperature of the cells on the relevant dates. Defendant's affidavit demonstrates that she thought that only a suicide mattress and gown were to be issued to a prisoner being placed on suicide watch. Plaintiff is correct in noting that MDOC Policy Directive 04.06.115(P)(3) indicates that a suicide prevention blanket should be issued to a prisoner placed on suicide observation. However, any misunderstanding of this policy by Defendant would establish, at most, negligence, not the deliberate or wanton deprivation required to support the subjective component of an Eighth Amendment deprivation claim. Therefore, in the opinion of the undersigned, Plaintiff has not demonstrated facts on which a jury could reasonably decide in his favor. Accordingly, Defendant should be awarded summary judgment on the Eighth Amendment claim.

Plaintiff claims that his due process rights were violated because Defendant placed him on suicide watch without proper justification. A prisoner's Due Process rights are violated where he suffers restraint which imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791 (CA 6, 1995) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). The determination of whether a liberty interest is implicated is made based on whether the placement on suicide would will affect the duration of the inmate's sentence. *See Jones v. Baker*, 155 F.3d 810, 812 (CA6, 1998); *Sandin*, 515 U.S. 472. Plaintiff has not alleged that being placed on suicide watch imposes an atypical or significant hardship in relation

to other aspects of incarceration, nor has he presented evidence from which this inference could be reasonably drawn. Moreover, being placed on suicide watch does not affect the length of Plaintiff's sentence. Therefore, in the opinion of the undersigned, Plaintiff has failed to state a claim under the Fourteenth Amendment.

Plaintiff claims that Defendant acted against him in retaliation for his previous litigation against other AMF staff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff has not produced any evidence indicating that Defendant was aware of Plaintiff's previous lawsuits. Furthermore, no reasonable inference of retaliation can be drawn from the chronology of the alleged events because Plaintiff's unrelated complaints were filed more than

seven months prior to the alleged retaliatory incident. Plaintiff has failed to establish a causal relationship between protected conduct and the alleged retaliatory acts, and has therefore failed to meet his burden with respect to his First Amendment retaliation claim.

Plaintiff also alleges that he was discriminated against on the basis of, among other things, his race. To establish a violation of the Equal Protection Clause, there must be proof that a discriminatory intent or purpose was a factor in an action taken by the prison officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Plaintiffs must allege that a state actor intentionally discriminated against them because of his membership in a protected class. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990); *see Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993) (protection violated by a pattern of harassment that shows a selective discriminatory purpose).

Plaintiff here has made conclusory statements that Defendant discriminated against him as a racial minority. However, he has not supported this contention with any evidence, noting only that a white inmate housed nearby had a suicide blanket while Plaintiff did not. This single circumstance is not a sufficient basis from which a reasonable inference of discrimination could be drawn. Plaintiff has therefore failed to sustain his burden of proof with regard to his equal protection claim. Defendant is therefore entitled to summary judgment.

Defendant asserts that she is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Defendant did not violate any of

Plaintiff's constitutional rights, and because Plaintiff has pointed to no other federal right that may be implicated by Defendant's conduct, Defendant is entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment. Accordingly, it is recommended that Defendant's Motion Summary Judgment (Docket #28) be granted, Plaintiff's motion for summary judgment (Docket #41) be denied, and this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                              /s/ Timothy P. Greeley  
                                              TIMOTHY P. GREELEY  
                                              UNITED STATES MAGISTRATE JUDGE

Dated: July 23, 2007